**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

```
---------------------------------------X
```
DUNKIN' DONUTS FRANCHISED RESTAURANTS
LLC, BASKIN-ROBBINS FRANCHISED SHOPS LLC,     NOT FOR PUBLICATION
DDIP HOLDER LLC, BR IP HOLDER LLC, and DB
REAL ESTATE ASSETS I LLC,                     <u>**MEMORANDUM & ORDER**</u>

      Plaintiffs,                           07-CV-3662 (KAM)(MDG)

   - against –

TIM & TAB DONUTS, INC. and SUNGARY
DONUTS, INC.,

      Defendants.
```
---------------------------------------X
```

**MATSUMOTO**, United States District Judge:

     Pending before the court are plaintiffs' motions for

summary judgment and a preliminary injunction.  Plaintiff

Dunkin' Donuts Franchised Restaurants LLC ("Dunkin' Donuts") is

the franchisor of Dunkin' Donuts franchises and plaintiff

Baskin-Robbins Franchised Shops LLC ("Baskin-Robbins") is the

franchisor of Baskin-Robbins stores (Baskin-Robbins and Dunkin'

Donuts collectively, "Franchisors").  Plaintiffs DD IP Holder

LLC and BR IP Holder LLC are the holders of the Dunkin' Donuts

and Baskin-Robbins trademarks.  Plaintiff DB Real Estate Assets

I LLC ("DB Realty") is the lessor of real property to some

Dunkin' Donuts franchisees (DB Realty, DD IP Holder LLC, BR IP

Holder LLC, and Franchisors, collectively, "plaintiffs").

Defendants Tim & Tab Donuts, Inc. and Sungary Donuts, Inc.

(collectively "defendants") each operate a Dunkin' Donuts/Baskin-Robbins combination ("combo") shop in Kings County, New York. Defendant Tim & Tab entered into a lease with DB Realty to occupy the premises at Emmons Avenue for one of Dunkin' Donuts/Baskin-Robbins combo shops. For the following reasons, plaintiffs' motions are granted in part and denied in part.

**BACKGROUND**

## I. **Procedural History**

Plaintiffs commenced the pending action against defendants on August 30, 2007, alleging breach of franchise agreements ("agreements") entered into between the Franchisors and defendants, breach of the lease agreement ("lease") entered into between Tim & Tab and DB Realty, trademark infringement, trade dress infringement, and unfair competition. On March 14, 2008, defendants filed their amended answer and asserted counterclaims against plaintiffs. (Doc. No. 15.) Defendants' counterclaims are for breach of contract and good faith and fair dealing, a declaration that the agreements are unconscionable, negligent misrepresentations and omissions, and unjust enrichment. At a status conference on August 19, 2008, the court ordered fact discovery closed on 8/29/08. (Minute Entry 8/19/08.)

On December 15, 2008, plaintiffs filed a letter motion for a preliminary injunction. At a status conference on December 29, 2008, the court set a briefing schedule for the plaintiffs' motion for summary judgment and preliminary injunction. On January 22, 2009, plaintiffs filed the pending motion for summary judgment and motion for a preliminary injunction, including defendants' opposition thereto.

## II. **Undisputed Materials Facts**

Plaintiffs submitted a Local Civil Rule 56.1 Statement of Undisputed Material Facts to which defendants have failed to respond. Therefore, the facts set forth in plaintiffs' Rule 56.1 Statement are deemed admitted by defendants. Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998); Stroud v. New York City, 374 F. Supp. 2d 341, 349 (S.D.N.Y. 2005). The facts set forth below are taken from plaintiffs' Rule 56.1 Statement. Nonetheless, they are viewed in the light most favorable to the defendants, as the non-moving party.

On June 25, 1990, DB Realty and Tim & Tab entered into a lease (the "Emmons Avenue Lease"), authorizing Tim & Tab to occupy the Emmons Avenue premises. (Rule 56.1 Stmt. ¶ 27.) Under the Emmons Avenue Lease, Tim & Tab agreed to pay rent and taxes on the 15th day of the month immediately preceding the month for which the payments are due, and percentage rent equal

to 7 percent of annual sales greater than $165,000 no later than 15 days afer the close of each lease month. (Rule 56.1 Stmt. ¶ 31.) Under the Emmons Avenue Lease, if the tenant fails to pay any monies that are due within ten days of its receipt of a notice to cure, then it shall be in default and DB Realty is entitled to terminate the lease. (Rule 56.1 Stmt. ¶ 32.) The lease provides that the lessee pays all collection costs, reasonable attorneys' fees and interest, should it fail to pay DB Realty when due any monies required under the Emmons Avenue Lease. (Rule 56.1 Stmt. ¶ 33.) The Emmons Avenue Lease provides that Tim & Tab "shall use the PREMISES only for the operation of a Dunkin' Donuts Shop and for the operation of a Baskin-Robbins Unit, in accordance with the provisions of the Franchise Agreement with Dunkin' Donuts Incorporated and Baskin-Robbins USA, Co." (Rule 56.1 ¶ 41.)

On April 1, 2002, Franchisors received an Agreement of Sale for the Dunkin' Donuts Franchise located at 2712-14 Emmons Avenue, Brooklyn, New York (the "Emmons Avenue Premises"), listing the purchasers as Manickawasager Subramaniam and Jeanne M. Schlissel and the sellers as Emmons Donuts, Inc. and Sammy Chia Yung Hsiao. (Rule 56.1 Stmt. ¶ 50.) The Agreement of Sale contains the following provision:

> Notwithstanding anything herein to the
> contrary, it is agreed that BUYER may
> negotiate with Dunkin' Donuts and Baskin

Robbins regarding an extension of the Lease
and/or Franchise Agreements upon such terms
as BUYER may deem appropriate. SELLER agrees
not to interfere in any way in such
negotiations between BUYER and Dunkin'
Donuts and/or Baskin-Robbins. IN NO EVENT,
however, shall the results of such
negotiation affect BUYER'S obligations to
proceed with the purchase herein
contemplated.

(Rule 56.1 Stmt. ¶ 50.) Subramaniam and Schlissel signed

acknowledgments of their receipt of the Uniform Franchise

Offering Circular ("UFOC") required by the Federal Trade

Commission and the New York State Franchise Sales Act on April

11, 2002 and January 23, 2003. Subramaniam also signed UFOC

receipts on September 15, 2003, October 19, 2003, December 19,

2003, and January 18, 2004. The UFOC contains a copy of the

current Franchise Agreement, later signed by Subramaniam and

Schlissel.

On October 10, 2003, the Franchisors and defendant Tim

& Tab Donuts, Inc. ("Tim & Tab") entered into a Franchise

Agreement (the "Emmons Avenue Agreement"), authorizing Tim & Tab

to operate a restaurant using the Dunkin' Donuts and Baskin-

Robbins Systems at the Emmons Avenue Premises. (Rule 56.1 Stmt.

¶ 25.) On April 1, 2004, the Franchisors and defendant Sungary

Donuts, Inc. ("Sungary") entered into a franchise agreement

("Knapp Street Franchise Agreement"). (Rule 56.1 Stmt. ¶ 26.)

The Franchise Agreements contain provisions that the Agreements

and documents contained therein constitute the entire agreement and "supersedes all prior agreements, no other representation having induced FRANCHISEE to execute this Agreement; and there are no representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein, which are of any force or effect with reference to this Agreement or otherwise." (Rule 56.1 Stmt. ¶ 52.) Additionally, the Franchise Agreements contain a provision entitled "Independent Investigation" that states that "THE PROSPECT FOR SUCCESS OF THE BUSINESS VENTURE UNDERTAKEN BY FRANCHISEE BY VIRTUE OF THIS AGREEMENT IS SPECULATIVE . . . . FRANCHISOR MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE POTENTIAL SUCCESS OF THE BUSINESS VENTURE UNDERTAKEN BY FRANCHISEE HEREBY." (Rule 56.1 Stmt. ¶ 52.) Furthermore, the Franchise Agreements contain a provision stating "FRANCHISEE acknowledges receiving a copy of this Agreement, the attachments thereto, and agreements relating thereto, if any, at least five (5) business days prior to the date on which this Agreement was executed." (Rule 56.1 Stmt. ¶ 52.) The Franchise Agreements also contain a "CERTIFICATION OF FRANCHISEE" which states

> DESCRIBE BELOW ALL PROMISES AND
> REPRESENTATIONS MADE BY FRANCHISOR THAT ARE
> NOT EXPRESSLY CONTAINED IN THE FRANCHISE
> AGREEMENT OR UNIFORM FRANCHISE OFFERING
> CIRCULAR BUT WHICH INFLUENCED FRANCHISEE'S
> DECISION TO SIGN THIS FRANCHISE AGREEMENT.

> If the answer is "none" please write "NONE"
> below.

The word "NONE" is printed in ink in the space below the above statement in each Franchise Agreement.  Subramaniam and Schlissel certified that the above statement is true by signing their names below it.  (Rule 56.1 Stmt. ¶ 54.)

Pursuant to the Emmons Avenue Franchise Agreement and the Knapp Street Franchise Agreement, defendants are required to pay franchise fees and advertising fees on a weekly basis. (Rule 56.1 Stmt. ¶ 28.)  Defendants are also required to submit sales reports with their payments, because the amount of franchise fees and advertising fees is based on gross sales. (Rule 56.1 Stmt. ¶ 28.)  Under the Franchise Agreements, a seven-day cure period applies if the franchisee fails to pay monies due.  (Rule 56.1 Stmt. ¶ 29.)  A failure to timely cure a default payment allows the franchisors to terminate the franchise agreements.  (Rule 56.1 Stmt. ¶ 29.)  The Franchise Agreements provide that once they are terminated, the franchisee must cease using the Dunkin' Donuts and Baskin-Robbins "Proprietary Marks and other trade secrets, confidential information, operating manuals, slogans, trade dress, signs, symbols or devices which are part of the FRANCHISOR's System(s) or are otherwise used in connection with the operations of the Unit."  (Franchise Agreements ¶ 9.4.3; Rule 56.1 Stmt. ¶ 29.)

Defendants' failure to timely remit monies due under the Franchise Agreements obligates them to pay collection costs, reasonable attorney's fees, and interest on the unpaid amounts. (Rule 56.1 Stmt. ¶ 30.) Additionally, the Emmons Avenue Franchise Agreement provides that Tim & Tab "warrants that a Franchise Agreement between LESSEE and Dunkin'Donuts Incorporated, to operate the DUNKIN' DONUTS SHOP is in full force and effect and that this LEASE is subject to said Franchise Agreement remaining in full force and effect. If said Franchise Agreement is terminated for any reason, then the LESSOR shall have the right to terminate this LEASE." (Rule 56.1 Stmt. ¶ 41.)

As of May 10, 2007, Tim & Tab owed Franchisors and DB Realty $75,906.99, and Sungary owed Franchisors $15,649.26. Plaintiffs' local counsel in New York sent defendants notices to cure under their Franchise Agreements and Lease of the Premises occupied by Tim & Tab, together with accounts receivable status reports showing the balance then due. (Rule 56.1 Stmt. ¶ 42.) On that day, pursuant to the Emmons Avenue Lease, plaintiffs sent Tim & Tab a Notice to Cure (the "Emmons Avenue Notice to Cure") by overnight carrier to the Emmons Avenue Premises and to Manickawasagar Subramaniam at 2629 East 27th Street, Brooklyn, New York (the "27th Street Premises"). The Emmons Avenue Notice to Cure demanded that Tim & Tab cure default in paying franchise

fees, advertising fees, rent, percentage rent, taxes and other charges. (Rule 56.1 Stmt. ¶ 34.) Tim & Tab received the Notice to Cure on May 11, 2005. More than fifteen days passed after Tim & Tab received the Notice to Cure without the defaults having been cured. (Rule 56.1 Stmt. ¶ 34.)

On May 11, 2007, pursuant to the Knapp Street Franchise Agreement, plaintiffs sent Sungary a Notice to Cure (the "Knapp Street Notice to Cure") by overnight carrier to the Knapp Street Premises and to Subramaniam at the 27th Street Premises. On May 14, 2007, Sungary received the Knapp Street Notice to Cure. More than fifteen days passed after defendant received the Knapp Street Notice to Cure without the defaults having been cured. (Rule 56.1 Stmt. ¶ 35.)

On June 5, 2007, Tim & Tab still owed Franchisors and DB Realty $79,677.02, and Sungary owed Franchisors $9,658.45. That day, pursuant to the Emmons Avenue Franchise Agreement and the Emmons Avenue Lease, plaintiffs sent Tim & Tab a Notice of Termination (the "Emmons Avenue Notice of Termination") by overnight carrier to the Emmons Avenue Premises and to Manickawasagar Subramaniam at the 27th Street Premises. Tim & Tab received the Emmons Avenue Notice of Termination on June 6, 2007. The Emmons Avenue Notice of Termination terminated the Emmons Avenue Franchise Agreement and the Emmons Avenue Lease,

effective immediately, based on the failure to cure the defaults listed in the Emmons Avenue Notice to Cure.

On June 5, 2007, pursuant to the Knapp Street Franchise Agreement, plaintiffs sent Sungary a Notice of Termination (the "Knapp Street Notice of Termination") by overnight carrier to the Knapp Street Premises and to Subramaniam at the 27th Street Premises.  Sungary received the Knapp Street Notice of Termination on June 5, 2007.  The Knapp Street Notice of Termination terminated the Knapp Street Franchise Agreement, effective immediately, based on the failure to cure the defaults listed in the Knapp Street Notice to Cure. (Rule 56.1 ¶ 37.)  Plaintiffs continued to send defendants notices to cure on May 10, 2007, June 6, 2007, February 25, 2008, August 5, 2008, October 10, 2008, and November 3, 2008. (Rule 56.1 Stmt. ¶ 44.)  Tim & Tab has not reported Dunkin' Donuts sales since March 2008, and has not reported Baskin-Robbins sales since mid-June 2008.  Sungary has not reported Dunkin' Donuts or Baskin-Robbins sales since July 19, 2008. (Rule 56.1 Stmt ¶ 45.)

Defendants continue to use Dunkin' Donuts and Baskin-Robbins names, trademarks and service marks in the operation of their retail food businesses in Kings County.  (Rule 56.1 Stmt. ¶ 46.)

## DISCUSSION

### III. **Summary Judgment Standard**

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2d Cir. 2001).

Nevertheless, the nonmoving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture

is [sic] insufficient to preclude the granting of the motion."); Nat'l Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact.").

Nor can the nonmoving party rest only on the pleadings. Celotex, 477 U.S. at 324 (Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings"); Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002). Instead, each statement of material fact by the movant or opponent must be followed by citation to evidence which would be admissible, as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

Plaintiffs seek summary judgment in their favor as to defendants' liability for breach of contract of the Franchise Agreements and Lease (Counts 1-11) and for violation of the

Lanham Act for trademark infringement, unfair competition and
trade dress infringement (Counts 12-17), and dismissal of
defendants' affirmative defenses and counterclaims.

### A. Breach of Contract

Plaintiffs argue that summary judgment should be
granted in their favor on the breach of contract claims.  Under
New York law, to establish a breach of contract claim, a
plaintiff must prove the "(1) existence of a contract, (2)
performance by plaintiff, (3) breach of the contract by
defendant and (4) damages resulting from the breach." <u>Eastside
Food Plaza, Inc. v. "R" Best Produce, Inc.</u>, 03-cv-106 (SAS),
2003 U.S. Dist. LEXIS 12758, at *14 (S.D.N.Y. July 23, 2003)
(citing <u>Terwilliger v. Terwilliger</u>, 206 F.3d 240, 245-46 (2d
Cir. 2000)).  Generally, "[a] party is bound by a contract it
has signed." <u>Hetchkop v. Woodlawn at Grassmere, Inc.</u>, 116 F.3d
28, 34 (2d Cir. 1997).  The court gives unambiguous contract
terms their plain meaning.  <u>Krumme v. Westpoint Stevens Inc.</u>,
238 F.3d 133, 139 (2d Cir. 2000).

It is undisputed that defendants agreed to pay
franchise fees and advertising fees and submit sales reports on
a weekly basis and that Tim & Tab agreed to pay rent, taxes and
percentage rent monthly pursuant to Franchise Agreements and a
Lease.  Indeed, the unambiguous language of the Lease and

Franchise Agreements establishes that the parties were so obligated. Defendants failed to cure their defaults within seven days of receiving written notice to cure from the Franchisors. Defendants assert that they were overcharged franchise fees at least five times during the course of 2007, totaling at least $113,000; the defendants support their position that they were overcharged with Subramanian's sworn statement, but it is unsupported by documents. Furthermore, defendants do not otherwise dispute the amounts owed as specified in plaintiffs' Rule 56.1 Statement ¶ 44. Pursuant to the Franchise Agreements, the defendants' failure to cure constitutes grounds for termination of the Franchise Agreements. The Lease provides that it can be terminated by DB Realty if Tim & Tab fails to cure a monetary default within ten days of its receipt of a written notice to cure. As a result, the Franchise Agreements and Lease were terminated.

By failing to pay monies owed within seven days of receiving the notice to cure, defendants breached the Franchise Agreements and Lease unless the contracts are void or voidable. Defendants argue that plaintiffs' fraudulent inducement to purchase the Emmons Avenue Franchise "shields Defendants from liability in this matter" (Def. Mem. at 14) and "trigger[s] Defendants' unclean hands defense" (Def. Mem. at 16). The elements of fraud are "(i) a material false representation or

omission of an existing fact, (ii) the defendant's knowledge of the falsity, (iii) the defendant's intent to defraud, (iv) the plaintiff's reasonable reliance upon the misrepresentation or omission, and (v) consequent damage to the plaintiff." Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 148 F.3d 194, 196 (2d Cir. 1998). In proving the elements of fraud, the proponent must put forth clear and convincing evidence. Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007) (applying the standard at the summary judgment stage). To survive summary judgment, a party alleging fraud must produce evidence other than conclusory allegations and affidavits. Shred-It USA, Inc. v. Mobile Data Shred, 222 F. Supp. 2d 376, 379 (S.D.N.Y. 2006), aff'd Shred-It USA, Inc. v. Mobile Data Shred, Inc., 03-7633 (L), 03-7655, 2004 U.S. App. LEXIS 3530 (2d Cir. Feb. 25, 2004). "[T]he evidence presented by the non-moving party in opposition to summary judgment must be enough to make 'any inference of fraud . . . "unequivocal."'" Century Pac., 528 F. Supp. 2d at 219 (quoting Miller v. Grigoli, 712 F. Supp. 1087, 1095 (S.D.N.Y. 1989) (quoting Manchel v. Kasdan, 144 N.Y.S.2d 694, 695 (App. Div. 1955), aff'd, 1 N.Y.2d 734 (N.Y. 1956))).

Here, defendants have not set forth any evidence of any elements of their claims of fraud. Instead, plaintiffs rely on conclusory allegations contained in their Memorandum of Law

15

and the Certification of Manackawasacar Subramaniam, which
merely summarizes what certain individuals told Subramaniam
before he purchased the Emmons Avenue store.  As stated above,
an affidavit with conclusory allegations of fraud is
insufficient to support a claim of fraud at the summary judgment
stage.  Moreover, it does not appear that the alleged statements
paraphrased in Subramaniam's affidavit are admissible.
Additionally, there is no evidence that any of the statements
summarized in Subramaniam's affidavit were material or that, if
they were misrepresentations, that plaintiffs intended them to
be so.  Furthermore, there is no evidence that defendants relied
on any misrepresentations or that any reliance was reasonable,
particularly because defendants had counsel who were provided
with documents setting forth the franchise and lease terms.
Because defendants have not set forth any evidence of fraud,
their assertions of fraud are insufficient to defeat liability
for the breach of contract or invoke the doctrine of unclean
hands.

Furthermore, although general merger clauses are
ineffective to preclude parol evidence that a party was induced
to enter a contract by means of fraud, when the contract states
that a contracting party disclaims the existence of or reliance
upon specified representations, that party will not be allowed
to claim that he was defrauded into entering the contract in

reliance on those representations. <u>Mfrs Hanover Trust Co. v.</u> <u>Yanakas</u>, 7 F.3d 310, 315 (2d Cir. 1993). When a fraud defense is inconsistent with specific recitals in a contract, defendants are foreclosed from a claim of fraudulent inducement. <u>Id.</u>; <u>see</u> <u>also</u> <u>Citibank N.A. v. Palpinger</u>, 66 N.Y.2d 90, 95 (1985). Here, defendant Subramaniam was represented by counsel throughout the contract negotiations. The contract contains several disclaimers, one specifically addressing any representation made regarding profits and expenses. Furthermore, if Subramaniam relied on any representations, the contract required him to state as much. He stated the opposite, in direct contradiction to his current position. In light of the specific disclaimers, and Subramaniam's representation by counsel during the contract negotiations, he is foreclosed from claiming a defense of fraud, even if there were evidence of such.

For the foregoing reasons, plaintiffs' motion for summary judgment in their favor as to the breach of contract claims is granted. On October 27, 2009 at 9:30 a.m. the parties shall appear for a hearing on damages.

### B. Lanham Act Causes of Action

Plaintiffs additionally seek summary judgment on their Lanham Act causes of action for trademark infringement, unfair competition based on defendants' trademark infringement, trade

dress infringement, and unfair competition based on trade dress infringement.  Plaintiffs seek a permanent injunction barring defendants from further use of their trademark and trade dress. Defendants do not address plaintiffs' arguments with regard to the Lanham Act causes of action.[1]

### 1. Trademark and Trade Dress Infringement and Unfair Competition

To prevail on a trademark or trade dress infringement and unfair competition claim, a plaintiff must establish 1) the trademark or trade dress is valid and legally entitled to protection, and 2) the defendant's unlicensed use of the same or similar trademarks or trade dress is likely to create confusion concerning the origin of the goods or services.  <u>Virgin Enters. Ltd. v. Nawab</u>, 335 F.3d 141, 146 (2d Cir. 2003); <u>LeSportsac, Inc. v. K Mart Corp.</u>, 754 F.2d 71, 75 (2d Cir. 1985); <u>see</u> 15 U.S.C. § 1125(a).

Registered trademarks are presumed to be valid and are thus protected.  <u>See</u> 15 U.S.C. § 1065; <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.</u>, 799 F.2d 867, 871 (2d Cir. 1986). It is undisputed that plaintiff DD IP Holder LLC owns the trademark, service mark and trade name "Dunkin' Donuts," which is registered on the Principal Register of the United States

---

[1]     To the extent that defendants' unclean hands argument is made as to the Lanham Act claims as well as the breach of contract claims, it fails for the reasons discussed above.

Patent Office.  (Rule 56.1 Stmt. ¶ 11.)  BR IP Holder LLC owns the trademark, service mark and trade name "Baskin-Robbins," which is registered on the Principal Register of the United States Patent Office.  (Rule 56.1 Stmt. ¶ 18.)  It is undisputed that defendants continue to use Dunkin' Donuts and Baskin-Robbins trademarks, service marks and trade name.  (Rule 56.1 Stmt. ¶ 46.)

A product's trade dress is its total image and may include features such as size, shape, color or color combinations, and graphics.  LeSportsac, Inc., 754 F.2d at 75. For example, the trade dress of a restaurant  may "include the shape and general appearance of the exterior of the restaurant, the identifying sign, the interior kitchen floor plan, the décor, the menu, the equipment used to serve food, the servers' uniforms and other features reflecting on the total image of the restaurant."  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S 763, 765, n.1 (1992).

Plaintiffs assert that Dunkin' Donuts shops' trade dress is the "pink and orange color scheme, signage, menu boards, product selection and names, interior design and doughnut cases." (Rule 56.1 Stmt. ¶ 16.)  However, even if the court was to find that Dunkin' Donuts trade dress is protectable, there is no evidence before the court that defendants continue to use Dunkin Donuts trade dress. (See Rule

56.1 Stmt. ¶ 46.)  Additionally, plaintiffs have not
specifically identified what constitutes Baskin-Robbins' trade
dress or set forth evidence that defendants continue to use
Baskin-Robbins trade dress.  Therefore, plaintiffs' motion for
summary judgment on their trade dress infringement claims is
denied.

The court next addresses whether the defendants'
continued use of the Dunkin Donuts and Baskin-Robbins trademark
is likely to cause confusion.  As the court discussed supra, the
Franchise Agreements, through which defendants had a license to
use the plaintiffs' trademarks, were terminated.  As a matter of
law, "[t]here is a '"great likelihood of confusion when the
infringer uses the exact trademark' as the plaintiff."'"
Dunkin' Donuts, Inc. v. Northern Queens Bakery, Inc., 216 F.
Supp. 2d 31, 44 (E.D.N.Y. 2001) (quoting S&R Corp. v. Jiffy Lube
Int'l, Inc., 968 F.2d 371, 375 (3d Cir. 1992)).  The court finds
that the continued use of a franchisor's trademarks by a
terminated franchisee will cause confusion.  See S&R Corp. v.
Jiffy Lube Int'l, Inc., 968 F.2d 371, 375 (3d Cir. 1992).
Therefore, summary judgment on liability for trademark
infringement and unfair competition due to trademark
infringement is granted in favor of plaintiffs.  Plaintiffs'
summary judgment motion on their remaining trade dress
infringement claims is denied.

## 2. Permanent Injunction on Plaintiffs' Trademark Infringement Claims

"To obtain a permanent injunction, [plaintiffs] must demonstrate (1) actual success on the merits and (2) irreparable harm." Gucci Am. Inc. v. Duty Free Apparel, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003); see Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 170 F.R.D. 361, 385 (S.D.N.Y. 1997) ("The standard for obtaining a permanent injunction is 'essentially the same' as for a preliminary injunction with the exception that the plaintiff must actually succeed on the merits of the case, rather than merely demonstrate that success is likely in a future proceeding."). In the context of trademark infringement, the second prong is automatically satisfied by actual success on the merits, as irreparable harm is established by "a showing of likelihood of confusion." Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997) ("[T]he requirement of irreparable harm carries no independent weight, as we have held that a showing of likelihood of confusion (a requirement of both trademark infringement and unfair competition claims) establishes irreparable harm."). Accordingly, defendants are enjoined from further use of plaintiffs' trademarks, service marks, and trade names. See Chloe v. Designersimports.com USA, Inc., 07-CV-1791 (CS)(GAY), 2009 U.S. Dist. LEXIS 42351, at *34-35 (S.D.N.Y. April 29,

2009). Within ten (10) days of entry of this order, plaintiffs shall submit to the court a proposed permanent injunction order.

### C. Preliminary Injunction in Lieu of a Permanent Injunction on Plaintiffs' Remaining Trade Dress Claims

Plaintiffs additionally seek a preliminary injunction enjoining defendants' continued use of their trademarks, service marks, trade name and trade dress.  In light of the court's rulings on plaintiffs' motion for summary judgment, plaintiffs' motion for a preliminary injunction is moot, with the exception of their motion for a preliminary injunction enjoining defendants from continued use of plaintiffs' trade dress.  For the following reasons, plaintiffs motion for a preliminary injunction on plaintiff's trade dress claims is denied.

A party seeking a preliminary injunction must demonstrate 1) irreparable harm and either 2) (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. Int'l Dairy Foods Ass'n v. Amestov, 92 F.3d 67, 70 (2d Cir. 1996).

Plaintiffs allege trade dress infringement, but have not set forth any evidence as to what plaintiffs' trade dress is or that defendants continue to use plaintiffs' trade dress.  In the absence of such evidence, plaintiffs have not established

irreparable harm or either a likelihood of success on the merits
or sufficiently serious questions going to the merits.  Thus,
plaintiffs' motion for a preliminary injunction enjoining
defendants for using their trade dress is denied.

### D. Defendants' Affirmative Defenses and Counterclaims

Plaintiffs further move for summary judgment to
dismiss defendants' affirmative defenses and counterclaims.
Although the plaintiffs clearly enumerate each of defendants'
affirmative defenses and counterclaims on which they base their
motion, defendants have not made any arguments in opposition to
plaintiffs' motion.  "Federal courts may deem a claim abandoned
when a party moves for summary judgment on one ground and the
party opposing summary judgment fails to address the argument in
any way."  Taylor v. City of New York, 269 F. Supp. 2d 68, 75
(E.D.N.Y. 2003).  As a result of defendants' failure to oppose
plaintiffs' motion as to their defenses and counterclaims, the
court finds that the defendants abandoned their affirmative
defenses and counterclaims.  Thus, the court grants plaintiffs'
motion for summary judgment as to the affirmative defenses and
counterclaims.  See Wecare Holdings, LLC v. Bedminster Int'l
Ltd., 08-cv-6213, 2009 U.S. Dist. Lexis 20080, at *28 (W.D.N.Y.
Mar. 9, 2009).

To the extent that any of defendants' arguments in support of a claim for fraud can be broadly construed to include argument against the dismissal of the following affirmative defenses: 1) unclean hands (4th Affirmative Defense), 2) estoppel (5th Affirmative Defense), 3) failure to disclose (10th Affirmative Defense), and 4) wrongdoing (12th Affirmative Defense); and the counterclaim for negligent misrepresentations and omissions (3rd Counterclaim), the court grants summary judgment because defendants have failed to set forth sufficient evidence to raise a genuine issue of material fact as to these defenses and counterclaim. "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense – on that which the defendant bears the burden of proof at trial – a plaintiff may satisfy its *Rule* 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case." Federal Deposit Ins. Corp. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (quoting DiCola v. SwissRe Holding (North America), Inc., 996 F.2d 30 (2d Cir. 1993)) (internal quotations omitted). In cases where there is an absence of evidence to support an essential element of a defense or counterclaim, there is no genuine issue of material fact. Federal Deposit Ins. Corp., 34 F.3d at 54-55. As discussed fully, supra, defendants have not established the essential elements for a cause of

action for fraud and, by extension, claims based on fraud. Therefore, to the extent that any of these claims were not abandoned by defendants because they were incorporated into defendants' arguments regarding fraud, summary judgment is granted as to those affirmative defenses and counterclaims.

Moreover, defendants' failure to submit any evidence in support of a defense or claim other than fraud is an alternative basis for summary judgment for all of defendants' defenses and counterclaims. Thus, summary judgment is granted as to defendants' affirmative defenses and counterclaims.

### CONCLUSION

In sum, plaintiffs' motion for summary judgment is granted in part and denied in part as follows: 1) Plaintiffs' motion for summary judgment for breach of contract is granted. The Franchise Agreements and Lease are terminated by their terms. 2) Plaintiffs Dunkin' Donuts and Baskin-Robbins' motion for summary judgment for trademark infringement and unfair competition is granted. Defendants are enjoined from continued use of plaintiffs' trademarks, trade names and service marks. Plaintiffs shall submit a proposed permanent injunction order within ten (10) days of the entry of this Memorandum and Order. 3) Plaintiffs Dunkin' Donuts and Baskin-Robbins' motion for summary judgment for trade dress infringement is denied.

4) Plaintiffs' motion for summary judgment dismissing defendants' affirmative defenses and counterclaims is granted.

Plaintiffs' motion for a preliminary injunction, enjoining defendants from continued use of plaintiffs' trade dress is denied.

The parties shall appear for a telephone status conference on October 15, 2009 at 10:00 a.m.  The parties shall appear in-person for a hearing on damages on October 27, 2009 at 9:30 a.m. in courtroom 4E North.


**SO ORDERED.**

Dated: Brooklyn, New York
       September 15, 2009


_____  /s/_____ _____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York